**Robert R. GOEWERT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–653C.

United States Court of Federal Claims.

Aug. 31, 1998.

Gerald A. Goldman, Arthur R. Ehrlich, and Jonathan C. Goldman, Chicago, Illinois, for plaintiff.

Robert E. Kirschman, Jr., Washington, DC, with whom were Joseph A. Kijewski, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, and Frank W. Hunger, Assistant Attorney General, Civil Division, U.S. Department of Justice for defendant. Thorton Cherry, Department of Veteran Affairs, Lakeside Medical Center, Chicago, Illinois, of counsel.

## *OPINION*

SMITH, Chief Judge.

This case comes before the court on defendant's Motion to Dismiss pursuant to RCFC 12(b)(1). Plaintiff Dr. Robert Goewert claims that a Veterans Administration hospital constructively discharged him by suborning fabricated sexual harassment charges against him; this action amounted to a breach of an implied contract, unjustified personnel actions that resulted in a loss of pay, improper discipline of a senior federal employee, denial of due process rights, and deprivation of his right to salary. Plaintiff claims the court has jurisdiction over this action under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988).

## FACTS

At the time of his resignation in April 1994, Dr. Goewert held the position of Chief, Clinical Pathology, at the Veterans Administration (VA) Medical Center, Lakeside in Chicago, Illinois at a civil service pay grade of GS–13. Plaintiff was originally appointed to the position of chemist at the VA Lakeside on August 2, 1982, as "career conditional," meaning (among other things) that the appointment was subject to a one-year probationary period. Dr. Goewert continued to work at the VA Lakeside after fulfilling this period, and by April 1994, was "classified as competitive service [1] with permanent tenure with no veteran's preference" after more than 11 years at the hospital.

The problems that gave rise to this action apparently began prior to March 1994. In March 1994, the VA filed charges against

---

1. "The 'competitive service' consists of (1) all civil service positions in the executive branch, except (A) positions which are specifically excepted from the competitive service by or under statute; (B) positions to which appointments are made by nomination for confirmation by the Senate, unless the Senate otherwise directs; and (C) positions in the Senior Executive Service; (2) civil service positions not in the executive branch which are specifically included in the competitive service by statute...." 5 U.S.C. § 2102(a) (1988) (Civil Service Reform Act of 1978, Pub.L.

No. 95–484, 92 Stat. 1111 et seq.); *see United States v. Fausto*, 484 U.S. at 440, 441 n. 1, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The relevant regulations define "Competitive Status" as "acquired by completion of a probationary period under a career-conditional or career appointment ... An individual with competitive status may be, without open competitive examination, reinstated, transferred, promoted, reassigned, or demoted, subject to conditions prescribed by the Civil Service rules and regulations." 5 C.F.R. § 212.301 (1996).

plaintiff seeking his removal from his position based on two separate sexual harassment complaints from Lakeside employees. Plaintiff alleges that the sexual harassment complaints were only filed because he had learned of their falsification of employment records, and because he "charged one of them with being AWOL." Plaintiff offers evidence in his complaint that, in effect, employees perjured themselves and fabricated the sexual harassment charges against him; the VA Office of Special Counsel, according to plaintiff, ignored this exculpatory evidence. To corroborate his version of the facts, plaintiff avers that the VA used the same evidence that would have cleared his name to defend against an EEOC discrimination complaint instigated by one of the same complaining employees. In November 1995, the VA issued a final agency decision rejecting the latter employee's EEOC complaint, finding that the EEOC complaint was based on collusive and possibly perjured testimony. Dr. Goewert complains that "[t]he United States has refused to reinstate Goewert after it rejected the very charges of sexual harassment which it previously used to coerce him into an involuntary resignation and a constructive discharge." Further, he alleges that during the course of the investigation of the charges against him, VA personnel urged him to resign, threatened to transfer him to a "trivial research position," and warned he could not prevail even if the charges were false or fabricated, nor could he be restored to his position even if the charges were proven false.

The court held oral argument on defendant's Motion to Dismiss on August 26, 1998, and granted the motion from the bench. The court now explains its ruling in further detail.

## DISCUSSION

## I. JURISDICTION

The Court of Federal Claims' jurisdiction is derived from 28 U.S.C. § 1491 (1988) (the Tucker Act). The Supreme Court, interpreting this statute, has ruled that this court can hear a suit only if it is founded on a claim for money due to the plaintiff by the federal government. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Jurisdiction under the Tucker Act, which itself constitutes a waiver of sovereign immunity, must be founded upon a separate[2] substantive right to money, *Davis v. United States*, 36 Fed. Cl. 556 (1996), because the Act itself does not confer a substantive right to recover money damages from the government. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948.

### A. Exclusivity of CSRA Remedies

Defendant argues that this court lacks jurisdiction over plaintiff's claim of deprivation of right to salary under 5 U.S.C. § 5331 (1988), his request for reinstatement, and the claim of involuntary termination that allegedly triggers these rights. In fact, plaintiff admits that, taken one by one, his claims may not be within the jurisdiction of the court, but (innovatively) argues that, taken as a whole, they are within the Tucker Act jurisdiction. Plaintiff is incorrect with respect to his latter contention for the following reasons.

First, the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 202(a), 92 Stat. 1111, 1121–22 (CSRA) provides the exclusive remedy for plaintiff's claims. The CSRA was enacted to "replace the haphazard arrangements for administrative and judicial review of personnel action ... that was the

---

**2.** "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, ... and the claimant must demonstrate that the source of substantive law he relies upon " 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.' " " *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *U.S. v. Testan*, 424 U.S. at 400,

96 S.Ct. 948, quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). As plaintiff must realize, this court is thereby unable to grant any sort of injunctive relief in a personnel case. Plaintiff's citation to *Arakawa v. Reagan*, 666 F.Supp. 254 (D.D.C. 1987), which held that the District Court had jurisdiction over the constitutional claims of a federal employee seeking injunctive relief, is unavailing.

civil service system." *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). It replaced the civil service system "with an integrated scheme of administrative and judicial review designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445, 108 S.Ct. 668. At the time of plaintiff's resignation, he was classified as having a career conditional appointment with the status of competitive service with permanent tenure. Plaintiff's classification of "competitive service" both enables and commands him to seek redress under the CSRA through the Merit System Protection Board (MSPB), created by the CSRA as part of Congress' comprehensive overhaul of the civil service system. More importantly, this court has squarely held that the MSPB has "exclusive and continuing jurisdiction over all matters relating to a complainant's ... termination, subsequent reinstatement, and back pay award." *Shelleman v. United States*, 9 Cl.Ct. 452, 457 (1986) (quoting *McClary v. United States*, 7 Cl.Ct. 160 (1984), *aff'd in part, rev'd in part on other grounds*, 775 F.2d 280 (Fed.Cir.1985)); *see also Worthington v. the United States*, 41 Fed.Cl. 181 (1998) (holding that a federal employee's back pay claim involved a personnel action covered by the CSRA and fell under the exclusive and continuing jurisdiction of the MSPB).[3] Therefore, any claim that falls under the Court of Federal Claims' Tucker Act jurisdiction but relates to federal personnel actions, "should be analyzed according to the exclusive jurisdiction" set forth in the CSRA involving the MSPB. *Id.* at 457. In effect, if a plaintiff has a right to take action at the MSPB, as in the case at present based on plaintiff's status of competitive service, he does not also have the right to bring action in the Court of Federal Claims.[4] *Id.* at 457; *see also McClary*, 775 F.2d at 282 ("Since [plaintiff] could have taken his claim to the Board, he did not have a right of action on that same claim in the Claims Court and that court properly held that it lacked jurisdiction.").

■ The CSRA established the MSPB so that it would provide a uniform administrative forum for the comprehensive statutory scheme. The grievances brought forth by plaintiff can properly be redressed through the MSPB. Plaintiff alleges that "Defendant substantially interfered with his ability to defend himself at a hearing by suppressing exculpatory evidence and preventing him from speaking with any witnesses." However, plaintiff has not attempted to seek redress through the MSPB. Even if plaintiff was unlawfully denied a hearing, his appeal must be to the MSPB. This court does not have jurisdiction to hear such an appeal. *Villier v. United States*, 17 Cl.Ct. 341, 344 (1989) (holding that the Claims Court was without jurisdiction to hear plaintiff's claim that he had effectively been denied rights by his federal agency employer when he was dismissed from a VA hospital without a hear-

---

**3.** Claims based on involuntary terminations from competitive service federal employment are appealable to the MSPB. *See Gettings v. Department of the Air Force*, 48 M.S.P.R. 502 (1991). Competitive service employees have a general right to appeal removal actions to the MSPB (after their probationary periods plus one year of continuous service). *Anderson v. General Services Administration*, 56 M.S.P.R. 316, *aff'd*, 12 F.3d 1069 (Fed.Cir.1993).

**4.** *Kennedy v. United States*, 5 Cl.Ct. 792 (1984), held that this court did have jurisdiction over a civilian back pay case where the employee was suspended for 14 days or less and claimed deprivation of pay due to his exercise of protected constitutional (here, First Amendment) rights. The court reasoned that "Congress could easily have stated [in the CSRA] that it precluded judicial review for employees suspended for 14 days or less. Congress did not do so. Where an employee claims he was unconstitutionally deprived of a statutorily created substantive right, and where no other review is available, this Court is not prepared to abandon its jurisdiction over such a claim." *Kennedy*, 5 Cl.Ct. at 794. Plaintiff can draw no support from this case, because he was not suspended for less than 14 days, and thus must pursue the exclusive remedies provided by the CSRA. The plaintiff in *Kennedy*, by contrast, had no recourse under the CSRA. *Id.* at 793. Further, the rationale employed in *Kennedy* was implicitly rejected by the Supreme Court in *Fausto*. *See* 484 U.S. at 447, 108 S.Ct. 668 (congressional silence on the issue of what review "excepted" employees should receive must be read in the context of the entire CSRA, which "displays a clear congressional intent to deny the excluded employees the protections of" judicial review for personnel actions covered by 5 U.S.C. § 7511 et seq.).

ing).[5] The exclusivity of the remedies provided by the provisions of the CSRA effectively disposes of the remainder of plaintiff's claims, which the court now addresses.

## B. Plaintiff's Additional Claims Do Not Provide Bases for Jurisdiction in This Court

### 1. *Back Pay*

■ Plaintiff asserts that he is entitled to back pay. However, the Supreme Court has said, in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), that the CSRA " 'repealed' the judicial interpretation of the Back Pay Act—or, if you will, the Back Pay Act's implication—allowing review in the Court of Claims of the underlying personnel decision giving rise to the claim for back pay." 484 U.S. at 453–54, 108 S.Ct. 668. Any such claims that plaintiff has should be brought before the MSPB, not this court. *Id.* at 454, 108 S.Ct. 668 ("Post–CSRA, [the "appropriate authority" to determine whether a personnel action was unwarranted] would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination."). Plaintiff's claim for back pay must thus be dismissed. *See Worthington v. U.S.*, 41 Fed.Cl. 181 (1998).

### 2. *Due Process*

■ Plaintiff also asserts a due process claim. The Court of Federal Claims generally has no jurisdiction over claims "based on the due process clause of the Fifth Amendment since these provisions do not obligate the Federal government to pay money dam-ages." *Mobin v. United States*, 22 Cl.Ct. 331, 335 (1991). This follows logically from the bases for jurisdiction in this court articulated in Section I.A., *supra.* Plaintiff's due process claims must also be dismissed.

### 3. *Fifth Amendment Taking*

■ Finally, plaintiff claims that he has a property right to his employment based on the takings clause of the Fifth Amendment. Plaintiff attempts to explain that this is so "because he can only be terminated for just cause." There is no basis in the statute for such an assertion; as a competitive service employee, plaintiff may be terminated under 5 U.S.C. § 7513 "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (1988). Further, in *Mobin*, this court said that plaintiff could not "use the Fifth Amendment prohibition against uncompensated takings to escape the statutory restrictions on judicial review contained in the CSRA." *Mobin v. United States*, 22 Cl. Ct. 331, 335 (1991). "To the extent that plaintiff disputes the finding that 'cause' existed for his removal, plaintiff is merely seeking review of the agency decision and must, consistent with *Fausto*, resort to procedures specified in the CSRA for review of MSPB decisions." [6] *Mobin*, 22 Cl.Ct. at 335; *see also Berry v. United States*, 27 Fed.Cl. 96, 101–103 (1992) (dismissing plaintiff's claims based on adverse personnel action in reliance on *Fausto*, *Mobin*, and *Shelleman*). Even if the court were to grant plaintiff's request to amend his complaint to add a fifth amendment taking cause of action, it would be dismissed; there is simply no merit to such a claim.

---

5. *Villier* noted that plaintiff's arguments could appropriately be presented to the MSPB, and that an adverse decision in that forum could be appealed to the U.S. Court of Appeals for the Federal Circuit. *Villier*, 17 Cl.Ct. at 345. The same is true in plaintiff Goewert's case.

6. The court notes that, under several recent MSPB decisions, plaintiff has at least a chance to attain a jurisdictional hearing at the MSPB on his claim of involuntary termination. *See Wise v. Department of the Navy*, 73 M.S.P.R. 95, 97–98 (1997) (employee may rebut the presumption that a voluntary demotion is outside the MSPB's jurisdiction by establishing a prima facie case that the agency's actions effectively rendered the employee's action involuntary); *Cassel v. Department of Agriculture*, 72 M.S.P.R. 542, 546–47 (1996) (employees must establish that apparently voluntary actions were obtained "through duress, coercion, or misinformation by agency officials" in order to show that the actions were involuntary and "tantamount to removals"); *Bates v. Department of Justice*, 70 M.S.P.R. 659, 662 (1996) ("[W]here an employee's working conditions are rendered so intolerable that [he/she] is 'forced' to resign, there has been a constructive removal and the employee's resignation is involuntary") (citing *Hurwitz v. Department of the Army*, 61 M.S.P.R. 436, 439 (1994)).

## CONCLUSION

For the reasons set forth above, defendant's Motion to Dismiss is GRANTED, and plaintiff's complaint is hereby DISMISSED in its entirety for lack of jurisdiction under RCFC 12(b)(1).

It is so ORDERED.