Sylvester **BERRY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 91–1363C.

United States Court of Federal Claims.

Nov. 10, 1992.

James C. Barnes, Jr., Southfield, Mich., for plaintiff.

Gerald M. Alexander, with whom were Director David M. Cohen, Asst. Director Martha H. DeGraff and Asst. Atty. Gen.

Stuart M. Gerson, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge:

This matter is before the Court on both Defendant's Motion to Dismiss and Supplemental Motion to Dismiss, the basis for each being that the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1).[1] Plaintiff, Sylvester Berry, seeks damages, including back pay, benefits, and reinstatement to the United States Marshals Service (USMS or Service). Plaintiff alleges four claims arising out of the USMS's removal of him from the Service. This Court finds that it lacks jurisdiction over this matter.

### Factual Background

Plaintiff, a black male, is a former Deputy United States Marshal. He served in the USMS from April 1974 to October 1984 in the Eastern District of Michigan at Detroit.

On or about September 26, 1977, the Service imposed a fifteen day disciplinary suspension, to go into effect on October 17, 1977, against Plaintiff for submitting false information on a daily log. Plaintiff's Exhibit 1. Plaintiff filed discrimination charges, presumably with the Department of Justice, claiming he had been singled out for discipline because of his race. While the discrimination complaints were pending, Plaintiff and the USMS settled the dispute, memorializing the terms in a Memorandum of Agreement. Plaintiff's Exhibit 2. Therein, the Service agreed to rescind Plaintiff's suspension, reimburse him for back pay, expunge all reference to the suspension in his personnel file, and refrain from retaliating against him for filing the discrimination complaints. Plaintiff's Exhibits 2, 3, 4, and 5. In return, Plaintiff agreed to withdraw his complaints. *Id.*

In June of 1984, the USMS charged Plaintiff with offenses similar to those un-

---

1. Also pending is Plaintiff's Motion for Summary Judgment. Though Plaintiff characterizes the motion as a separate motion *and* as a response to Defendant's Motion to Dismiss, Plaintiff's motion shall be treated only as a response to Defendant's motion.

derlying the 1977 suspension. Pursuant to the removal procedures of the USMS, Plaintiff was discharged from the Service on October 9, 1984. Plaintiff appealed this action through the grievance/arbitration proceeding provided in the Master Agreement between the USMS and the International Council of U.S. Marshals Service Locals (Council). After considering various testimony and other evidence, the arbitrator concluded that the USMS's decision to remove Plaintiff was not arbitrary or capricious. Accordingly, on July 10, 1985, the arbitrator sustained Plaintiff's removal.

While his grievance was pending before the arbitrator, Plaintiff filed an unfair labor practice charge with the Federal Labor Relations Authority (FLRA), claiming the union breached its duty to fairly represent him in the grievance and arbitration proceedings; that is, that the union, as well as the arbitrator, improperly refused to consider his claims of racial discrimination. The FLRA refused to issue a complaint against the union.

Plaintiff subsequently appealed both the arbitration decision and the FLRA's refusal to the Merit Systems Protection Board (MSPB). On November 13, 1986, 31 M.S.P.R. 676, the MSPB found the allegations of discrimination unsubstantiated and dismissed Plaintiff's appeal for lack of jurisdiction. The United States Court of Appeals for the Federal Circuit sustained the jurisdictional dismissal by the MSPB, and further held that any appeal of the arbitra-

tor's decision was time barred. *Berry v. MSPB*, 824 F.2d 977 (Fed.Cir.1987).

In late 1990, Plaintiff filed a Complaint, under Title VII of the Civil Rights Act of 1964, in the U.S. District Court for the Eastern District of Michigan. *Berry v. Thornburg*, 90–CV–70751–DT. After a trial to the bench, the district court ordered judgment, on April 1, 1992, against Plaintiff. An appeal of that decision is currently pending.

Plaintiff filed the present action on August 16, 1991. He alleges, in essence, that the USMS failed to expunge certain records from his personnel file, as required by the terms of an agreement executed by Plaintiff and the Service in August of 1977; that the USMS improperly used such records to remove him; and, that his removal was improper in light of the offenses for which he was charged.[2]

### DISCUSSION

Defendant contends, in its Motion to Dismiss, that this Court lacks subject matter jurisdiction, because: (1) an express or implied contract does not arise from federal employment; (2) the Civil Service Reform Act (CSRA) is Plaintiff's exclusive remedy; and, (3) Plaintiff previously adjudicated his claims. Defendant contends further, in its Supplemental Motion to Dismiss, that 28 U.S.C. § 1500 (1992) precludes this Court from considering Plaintiff's Complaint because a suit incorporating the operative facts in this case was pending in a district

---

**2.** Plaintiff's first and fourth claims hinge on his allegation that the Service improperly relied on expunged records, relating to two disciplinary suspensions imposed against Plaintiff in 1977, to remove him. One suspension occurred in March and April of 1977, and the other occurred in October of that year. Plaintiff contends that the agreement entered into by the parties in August of 1977 required that all records referring to *either* of these suspensions be expunged. The agreement Plaintiff submits to the Court, however, refers only to his suspension "that went into effect on October 17, 1977, thru [sic] October 31, 1977." Plaintiff's Exhibit 2. That the agreement entertains only the October suspension is evident from several other documents Plaintiff submits as well. Plaintiff's Exhibits 3, 4, and 5. This point becomes important when reviewing the Proposed Removal prepared by Kenneth C. Holecko, Personnel Officer

for the Service, and the Decision of Proposed Removal prepared by Gary E. Mead, Assistant Director for Administration for the Service. Plaintiff's Exhibits 20 and 21, respectively. Plaintiff relies on each of these documents to support his contention that the USMS used expunged records to remove him. Though Plaintiff is correct in asserting that each document notes a 1977 disciplinary suspension, neither document refers to the October 1977 suspension, which was expunged. The Proposed Removal, specifically, and the Decision on Proposed Removal, generally, refer to Plaintiff's suspension in March and April of 1977. Because Plaintiff fails to offer any evidence that records of this suspension were to be expunged, or were improperly noted by the Service for that matter, the merits of Plaintiff's first and fourth claims appear tenuous at best.

court at the time the present action was filed.

## I.

### A. Breach of Contract.

In its Motion to Dismiss, Defendant first argues that Plaintiff has failed to state a claim for breach of contract. More particularly, Defendant argues that "[f]ederal employment does not create a contract." Plaintiff charges that a former federal employee can, under particular circumstances, state a claim for breach of employment contract against Defendant, citing *United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976), as support.

This Court is one of limited jurisdiction that may not entertain claims that fall outside specific grants of review. The jurisdictional grant relevant here is the Tucker Act, pursuant to which the Court is given the following jurisdiction:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1992). The Act, however, is only jurisdictional; it does not create any substantive right enforceable against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The Act merely confers jurisdiction in the event that a substantive right to sue the Government already exists. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). Therefore, the basis for jurisdiction must be a regulation, contract, or a statute distinct from the Tucker Act. *Mobin v. United States,* 22 Cl.Ct. 331, 333–34 (1991).

The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. *Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). It is well established that the rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status. *Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981). In *Hopkins,* however, the Supreme Court noted that the Federal Government could employ persons by contract, and held that plaintiff's claim for breach of contract was sufficient, under the provisions of the Tucker Act, to withstand a motion to dismiss for lack of jurisdiction. A narrow exception to the general rule, *Hopkins* clarified that formulation of a contract between the Government and one of its employees is possible, but the agreement must be specifically spelled out as a contract. 427 U.S. at 130–31, 96 S.Ct. at 2512–13; *Kania,* 227 Ct.Cl. at 464–65, 650 F.2d at 268. Furthermore, the claimant must show that the contract was made by a federal officer with authority to contract. *House v. United States,* 14 Cl.Ct. 32, 36 (1987) (citing *Kizas v. Webster,* 707 F.2d 524, 538 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984)). The presumption that federal employees generally do not have contractual relationships with the Government is in accordance with the requirement that a plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989).

Focusing on the instant matter, this Court cannot say there is no set of facts Plaintiff could prove which would establish that an express contract was created by the Memorandum of Agreement, and that this contract was breached as a result of his removal. *Cf. Hamlet v. United States,* 873 F.2d 1414, 1417 (Fed.Cir.1989). Nevertheless, Plaintiff fails to meet his burden for another reason—the statute of limitations.

In the absence of a specific statute of limitations, a suit in this Court is barred unless it is filed within six years of the date upon which the claim first accrued. 28 U.S.C. § 2501 (1965 & Supp. 1992). This statute is jurisdictional. *Farrell v. United States*, 9 Cl.Ct. 757, 758–59 (1986). It is interpreted strictly and may not be waived. *Id.* For purposes of determining this Court's jurisdiction, a claim first accrues when "all events have occurred which fix the [G]overnment's liability and entitle the claimant to institute an action." *Steiner v. United States*, 9 Cl.Ct. 307, 310 (1986); *see also Lins v. United States*, 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 249, 368 F.2d 847, 857 (1966).

Plaintiff's Complaint states that the alleged breaches occurred in October of 1984. The record establishes that the decision to remove Plaintiff from the Service was made on October 4, 1984. Accordingly, Plaintiff's breach of contract claims accrued on October 4, 1984, more than six years before the filing of this action. Furthermore, Plaintiff failed to raise his breach of contract claims in the prior administrative proceedings and is doing so for the first time in this Court. Since the claims were not the subject of the prior proceedings, such proceedings did not toll the 1984 date on which Plaintiff's claims accrued; indeed, Plaintiff's failure to raise such claims is a waiver. *See Lins*, 231 Ct.Cl. at 582, 688 F.2d at 786. Plaintiff's breach of contract claims—assuming he could prove a set of facts entitling him to relief—are time barred.[3]

B. *The CSRA.*

Defendant next argues both that the CSRA (5 U.S.C. § 7701 *et seq.* (1980 & Supp.1992)) is Plaintiff's exclusive remedy, and that Plaintiff has exhausted such remedy. Plaintiff, on the other hand, contends that the CSRA confers jurisdiction on this Court.

Plaintiff's effort to secure review by this Court of his removal "runs afoul of Congress's intent in adopting the CSRA," as interpreted by the United States Supreme Court in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Prior to the adoption of the CSRA, a federal employee could challenge certain types of personnel decisions in the Claims Court pursuant to the Tucker Act. *Fausto*, 484 U.S. at 444–45, 108 S.Ct. at 672. In *Fausto*, the Supreme Court reconsidered the effect of the CSRA on Tucker Act jurisdiction. It concluded that, in adopting the CSRA, Congress sought to replace the pre-existing patchwork system for administrative and judicial review of agency personnel decisions with an "integrated scheme ... designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445, 108 S.Ct. at 672. The Court described Congress's scheme as follows:

> [This scheme is based on] the primacy of the MSPB for administrative resolution of disputes over adverse personnel action ... and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review.... This enables the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an "unnecessary layer of judicial review" in lower federal courts, and "[e]ncourages more consistent judicial decisions...." S.Rep. No. 95–969 at 52, U.S.Code Cong. & Admin.News 1978, p. 2774; *see Lindahl v. OPM*, 470 U.S. [768,] 797–98 [105 S.Ct. 1620, 1636–37, 84 L.Ed.2d 674] [1985].

484 U.S. at 449, 108 S.Ct. at 674. It is, therefore, "crystal clear that [this Court] lack[s] jurisdiction to review [adverse personnel decisions] under the CSRA." *Ashgar v. United States*, 23 Cl.Ct. 226, 232 (1991); *see Mobin*, 22 Cl.Ct. at 333; *Dos*

---

3. This bar to Plaintiff's claims also applies to his remaining contentions that this Court has jurisdiction in this matter. *See LaMear v. United States*, 9 Cl.Ct. 562, 569, *aff'd*, 809 F.2d 789 (Fed.Cir.1986).

*Santos v. United States,* 19 Cl.Ct. 681, 684–85 (1990); *Villier v. United States,* 17 Cl.Ct. 341, 343–44 (1989). The right to bring an action under the CSRA forecloses any right to bring an action in this Court.[4] *Shelleman v. United States,* 9 Cl.Ct. 452, 457 (1986) ("The MSPB has been found to have *exclusive* and *continuing* jurisdiction over all matters relating to a complainant's ... termination, subsequent reinstatement, and back pay award.").

 The wrongs of which Plaintiff complains, USMS's failure to expunge his personnel record and the subsequent use of those records in his 1984 termination, challenge his suspension from the Service. Plaintiff has already exhausted the remedy provided by the CSRA, and he has challenged his termination through grievance and arbitration proceedings. Where a plaintiff has exhausted his recourse under the CSRA, "an even stronger prejudice exists in favor of precluding" him from suing in the Claims Court. *Shelleman,* 9 Cl.Ct. at 458. Plaintiff's disappointment with the outcome of these proceedings does not create jurisdiction in this Court.

 Plaintiff maintains, however, that even if the CSRA is his exclusive remedy, there has never been a judicial review of his claims' merits. The CSRA provides a procedure for direct judicial review of final decisions of the MSPB by the United States Court of Appeals for the Federal Circuit; a process which was explained to Plaintiff in *Berry,* 824 F.2d 977. *See* 5 U.S.C. § 7703(b)(1). The Federal Circuit specifically informed Plaintiff that this avenue of judicial review was foreclosed when he failed to file for review in a timely manner. Plaintiff, simply, waited too long to request the opportunity, provided by the CSRA, for judicial review. *Cf. Villier,* 17 Cl.Ct. at 345.

### C. Other Statutory and Regulatory Authorities.

In further response to Defendant's assertion that this Court lacks jurisdiction, Plaintiff relies on the Back Pay Act (5 U.S.C. § 5596 (1980 & Supp.1992)); the Administrative Procedure Act (5 U.S.C. § 701 *et seq.* (1977)); and executive department regulations, each in conjunction with the Tucker Act.

#### 1. The Back Pay Act.

 Plaintiff argues that the Back Pay Act creates subject matter jurisdiction in this case. The Back Pay Act authorizes back pay to an employee if the employee is found "by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action." 5 U.S.C. § 5596(b)(1). In *Fausto,* however, the Supreme Court concluded that, "under the comprehensive and integrated review scheme of the CSRA, the Claims Court ... is not an 'appropriate authority' to review an agency's personnel determination." 484 U.S. at 454, 108 S.Ct. at 677. The plain language of this decision cannot be ignored. Indeed, recent Claims Court decisions have dismissed lawsuits based on the Back Pay Act for lack of jurisdiction. *Mobin,* 22 Cl.Ct. at 334; *Shelleman,* 9 Cl.Ct. at 455–56. Plaintiff's contention fails.

#### 2. The Administrative Procedure Act.

 Plaintiff also alleges jurisdiction under the Administrative Procedure Act (APA). As stated previously, this Court's jurisdiction is limited to claims for money presently due from the United States. *Testan,* 424 U.S. at 398, 96 S.Ct. at 953. The court in *Paskert v. United States,* 20 Cl.Ct. 65, 77 (1990), noted that "[t]he APA ... specifically provides that it does not estab-

---

**4.** One exception to direct review of MSPB decisions in the Court of Appeals for the Federal Circuit relates to decisions on claims of discrimination. Pursuant to 5 U.S.C. § 7703(b)(2) (1980 & Supp.1992), judicial review of federal employee allegations of improper actions based on discrimination due to religion or national origin "shall be filed under § 717(c) of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e)–16(c))." But the district court, and not the Claims Court, is the proper forum for such judicial review. *Brown v. General Servs. Admin.,* 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976). Plaintiff took advantage of this exception in his *district court action filed in late 1990.*

lish jurisdiction over claims for money." *See Ashgar,* 23 Cl.Ct. at 230; *Mobin,* 22 Cl.Ct. at 334–35. Plaintiff's reliance on the APA is misplaced.

### 3. *Executive Department Regulations.*

█ Finally, Plaintiff asserts that jurisdiction exists, pursuant to the Tucker Act, upon the ground that disciplinary regulations of the Department of Justice and the Service were used improperly to assure Plaintiff the harshest possible penalty. Plaintiff cites the language in the Tucker Act which places within the purview of this Court's jurisdiction "any regulation of an executive department...." Again, the Tucker Act only provides jurisdiction over those regulations which mandate the payment of money. *Eastport S.S. Corp.,* 178 Ct.Cl. at 605–07, 372 F.2d at 1007–09; *see Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Neither regulation cited by Plaintiff mandates the payment of money, but simply describes the punishment for various offenses. *Cf. Ashgar,* 23 Cl.Ct. at 232.

### II.

Although the discussion above, with respect to Defendant's Motion to Dismiss, renders Defendant's Supplemental Motion to Dismiss moot, the nature of Defendant's motion compels clarification of the applicable authority. Defendant relies on the Federal Circuit's most recent interpretation of 28 U.S.C. § 1500, in *UNR Indus., Inc. v. United States,* 962 F.2d 1013 (Fed.Cir. 1992), *cert. granted sub nom., Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 373, 121 L.Ed.2d 285, (1992) to argue that this Court, for yet another reason, lacks subject matter jurisdiction over this action.

█ Section 1500 states:

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in the suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Strictly construing this provision, the Federal Circuit concluded in *UNR Industries,* that "if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on." 962 F.2d at 1021. The word "claim" does not refer to a particular legal theory, as opposed to the subject matter of the suit. *Id.* at 1024. Rather, "two lawsuits involve the same 'claim' if they are based on the same operative facts." *UNR Indus.,* 962 F.2d at 1020 (citing *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988)).

█ Defendant argues that the operative facts involved in the prior district court action are the same as those underlying the present cause. No doubt, the district court action embraced circumstances and facts common to this action, notwithstanding that the prior action was broader in scope: Plaintiff asserted numerous allegations of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff, on the other hand, insists that the operative facts in each case are different. In particular, Plaintiff relies on the district court's holding that Plaintiff's discharge from the Service was not subject to review by that court. Despite Plaintiff's protestations to the contrary, the district court refused to entertain the claims now before this Court, as well as a majority of the evidence of the underlying circumstances.

█ This Court is concerned with the precedent this case could set in light of *UNR Industries.* This Court is not convinced that the Federal Circuit's decision holds the *scope* of "operative facts" to be so broad as to effect an automatic divestiture of jurisdiction in the Claims Court as to *all* claims in an action before it on the sole basis that an "operative-facts analysis" precludes jurisdiction as to but *one* claim; that is, it may be that the operative facts are not the same with respect to each

claim in a particular action. In the present case, Plaintiff asserts several claims, relating to whether the Government breached a 1977 agreement with Plaintiff, that may involve operative facts different than those before the district court. Indeed, the district court specifically held that such claims, and the operative facts in which each is grounded, would not be entertained by that court. However, during the October 8, 1992, oral argument before this Court concerning Defendant's two motions, Plaintiff stated that he is engaged in an appeal of the district court's holding. While an operative-facts analysis, in light of *UNR Industries*, poses a challenge, a finding by this Court that it has jurisdiction to entertain certain claims, when a United States Court of Appeals is reviewing whether a district court has jurisdiction over the same claims, would fly in the face of the Federal Circuit's decision. Had Defendant's Motion to Dismiss not disposed of Plaintiff's four claims, Defendant's citation to *UNR Industries*, in its Supplemental Motion to Dismiss, would have.

### CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction, pursuant to RUSCC 12(b)(1). Defendant's Motion to Dismiss is hereby granted.

The Clerk of the Court shall enter judgment dismissing Plaintiff's Complaint. No costs.